**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-136**

| | |
|---|---|
| TOMMY COMBS AND R. J. COMBS (DECEASED), )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>)<br>ASHE COUNTY, JUDY PORTER POE, )<br>LARRY RHODES, WILLIAM SANDS, )<br>PAT MITCHELL, JAMES WILLIAMS, )<br>TIM WINTERS, ZACH EDWARDSON, )<br>MICHAEL D. DUNCAN, JOHN KILBY, )<br>GARCO INC. ENVIRONMENTAL )<br>INDUSTRIAL AND RECYCLING )<br>SERVICES, MARK BLEVINS, RAINBOW )<br>RECYCLING, DAVID HOOSIER, TONY )<br>BLEVINS, JOSEPH FRANCIS, JOSHUA )<br>HOPKINS, CHRISTOPHER ELDRETH, )<br>AND JERRY LEWIS , )<br>)<br>**Defendants.** )<br>) | **ORDER AND MEMORANDUM OPINION** |

**BEFORE THE COURT** are several motions to dismiss. First, Michael D. Duncan has filed a motion to dismiss pursuant to Rules 8 and 12(b)(6). (Doc. 29). Garco, Inc. ("Garco") filed a motion to dismiss pursuant to Rules 12(b)(1) and (6). (Doc. 31). Ashe County, Judy Porter Poe, Larry Rhodes, Williams Sands, Pat Mitchell, Sheriff James Williams, Tim Winters, John Kilby, Tony Blevins, Joseph Francis, Christopher Eldreth, Joshua Hopkins, and Jerry D. Lewis (collectively, the "Ashe County Defendants") have moved to dismiss pursuant to Rules 12(b)(1), (2), (4), (5), and (6). (Doc. 35). On May 12, this Court gave Plaintiff an additional fourteen days to file a responsive brief to these respective motions. (Doc. 62). On May 26, Plaintiff filed responses to all motions. (Docs. 63-65).

1

First, the Court will recount the facts as stated in the Complaint and its attached letter. Secondly, the Court will provide the standard of review. Third, the Court will address Judge Duncan's motion to dismiss, which is meritorious. Then the Court will construe the claims as presented in the Complaint. The Court will then determine whether these claims justify progressing in this litigation.

I. FACTUAL ALLEGATIONS

Plaintiff's[1] Complaint takes the form of two handwritten pages and a typed letter. The handwritten pages allege that, on August 16, 2011, several individuals trespassed upon R.J. Combs' land and, even though he protested, took away some property. Sheriffs watched this act.[2] Plaintiff claims that this act violated his Fourth Amendment and Fifteenth Amendment[3] rights along with his civil rights, civil liberties, and property rights secured by the Constitution. Plaintiff requests a sum of twelve million dollars for the mental abuse and hardship resulting from these actions

A typed letter, written by R.J. Combs ("R.J."), now deceased, provides further insight. R.J. notified the attorney for Ashe County that his property was being removed from his farm. Further, R.J. attempted to call Judge Duncan, but was unable to reach him. R.J. was also unsuccessful in his efforts to reach the Ashe County Manager and Ashe County Commissioner. R.J.'s letter provides an itemization of the property taken, which include several motor vehicles, a camper, auto parts, and farm equipment. R.J. and his brother, Plaintiff, were living in the camper at the time of the abatement. The property was abated because the land was held to be in

---

[1] The Court intentionally uses the singular because Tommy R. Combs may not bring an action on behalf of R.J. Combs. *See* Section III, *infra*.
[2] The deputies in question are Tony Blevins, Christopher Eldreth, Joseph Francis, Joshua Hopkins, and Jerry D. Lewis.
[3] The Fifteenth Amendment is clearly inapplicable to the instant case and will not be discussed.

violation of Ashe County's Junkyard ordinance.  The letter claims that R.J. made several motions in court, all of which were not considered.  In his letter, he states that his property should have been "grandfathered in" with respect to the enforcement of the ordinance.  R.J. states that the removal of the property constitutes an unlawful taking of his and Plaintiff's property.  Further, he claims that there are others who are similarly situated, who have not been prosecuted under the ordinance, and that he was improperly singled out.  The letter concludes by stating that North Carolina General Statute § 153A-132(c) was not complied with.

Several judicial records, attached to Garco's Motion to Dismiss, provide further insight.[4]  On August 2, 2007, Ashe County instituted an action against R.J. Combs claiming that he operated a "junkyard" in violation of Chapter 93 of Title Nine of the General Regulations and Ordinances of Ashe County (the "Junkyard Ordinance").  (Doc. 31-5, at ¶ 4); *see also* The Ashe County Ordinance for Control of Junk Materials, Junkyards, and Abandoned Motor Vehicles.

Ashe County's Complaint alleged that R.J. Comb's was the owner of land within Ashe County; that it was a "junkyard" as defined by the Junkyard Ordinance; that he was given written notice in accordance with the terms of the Ordinance and given numerous opportunities to comply; and that his operation of a "junkyard" constitutes a "public nuisance" that the County may abate.  (Doc. 31-5, at 1-2).  Specifically, the prayer for relief asked for a recovery of a civil penalty; a preliminary and permanent injunction, and "that the Court enter an order abating the public nuisance on the property of the Defendant." *Id.*

The Junkyard Ordinance regulates and requires permitting for junkyards.  A "Compliance Officer" enforces the provisions of the Junkyard Ordinance.  § 93.09(A)(1).  The Junkyard

---

[4] A Court may consider and take judicial notice of matters of public record when considering a motion to dismiss. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Ordinance defines "Compliance Officer" as "the County Manager or his designee." § 93.04, *Compliance Officer*. The Enforcement Provision states that

> The owner, tenant, or occupant of any building or land or any part thereof and agent or other person who participates in, assists, directs, creates, or maintains any situation that is contrary to the requirements of this chapter may be held responsible for the violation and suffer the penalties and be subject to the remedies herein provided.

§ 93.09(A)(3). The remedies under the Junkyard Ordinance include abatements, as well as "[a]ll appropriate remedies authorized by G.S. § 153A-123." § 93.99(C).

A trial was held. R.J. Combs did not appear in court on the final day of trial and did not present any evidence. (Doc. 31-3, at 1). On February 8, 2010, a jury verdict was entered finding that the materials located on R.J. Combs' property constitute "junk" and an unpermitted "junkyard." (Doc. 31-4, at 1). The Court retained jurisdiction of the matter to enter an Order of Abatement, as provided in N.C.G.S. § 153A-123. (*Id.*).[5][6] On April 16, 2010, Judge Duncan held a Notice of Hearing on Abatement. (Doc. 31-3, at 1). When the matter was called for hearing, R.J. Combs presented evidence on motions to set aside the jury verdict, which were denied. (*Id.*). The Court ordered R.J. Combs to remove all items which constituted "junk" and a "junk yard" within 90 days. (Doc. 31-3, at 3). The Court warned that it would consider entering an Order of Contempt should R.J. Combs not comply with the Order and that, if necessary, would

---

[5] "Abating public nuisances and protecting the public trust have long been part of governmental authority in North Carolina." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 541 (4th Cir. 2013) (citing cases from 1858 and 1815).

[6] North Carolina General Statute § 153A-123(e) provides that:

> An order of abatement may direct that buildings or other structures on the property be closed, demolished, or removed; that fixtures, furniture, or other movable property be removed from buildings on the property; that grass and weeds be cut; that improvements or repairs be made; or that any other action be taken that is necessary to bring the property into compliance with the ordinance.

enter a supplemental Order allowing Ashe County to abate the ordinance violations. During a September 17, 2010 hearing, R.J. Combs admitted that he had not complied with the Order. On October 28, 2010, the Court entered an Order stating that Ashe County could enter the premises of R.J. Combs to remove all items violating the ordinance. (Doc. 31-2, at 2). Moreover, the Order specified that the "County shall have a lien against the Defendant's property for the costs" of the abatement and retained jurisdiction to enter the amount of the lien. *Id.* at 2. The abatement was performed on August 16, 2011. On December 5, 2012, Judge Duncan held a hearing on the amount of the judgment lien. (Doc. 31-1, at 1). R.J. Combs was not present, although he was notified of the court date at a November 7, 2012 session of court. *Id.* Even though R.J. did not show up, Judge Duncan gave "Defendant [R.J.] Combs a final opportunity to be heard on th[e] issue." *Id.* Specifically, Judge Duncan mailed a proposed order stating that he would enter the amount of the judgment lien requested by Ashe County, Twenty Two Thousand Nine Hundred Six and 53/100 ($22,906.53), unless R.J. appeared in court on January 23, 2013 and convinced him otherwise. On January 23, 2013, Judge Duncan entered the proposed order stating that the amount of the judgment lien was Twenty Two Thousand Nine Hundred Six and 53/100 ($22,906.53). (Doc. 31-1).

As stated earlier, R.J. is deceased. On May 30, 2014, R.J.'s holographic will dated November 11, 2011 was admitted to probate. (Doc. 31-6). The probated will appointed Florence Combs Miller, R.J.'s sister, as executor. (*Id.* at 2). The will bequeathed his "property, land, deeds[,] and possessions" to Plaintiff and Florence Combs Miller.

II.  STANDARD OF REVIEW

Under a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable

5

inferences must be drawn in the non-movants favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). This requirement applies only to facts, not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Although the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," this obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 500 U.S. at 555, 570; *see Iqbal*, 556 U.S. at 662. Under *Iqbal*, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." 556 U.S. at 681.

The Court notes that "[a] document filed *pro se* is 'to be liberally construed' . . . [and] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Erickson*, however, does not "undermine *Twombly*'s requirement that a pleading contain 'more than labels and conclusions.'" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, judges "cannot be expected to construct full claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

6

III.     TOMMY COMBS MAY NOT BRING A CLAIM ON BEHALF OF THE ESTATE OF R.J. COMBS

North Carolina General Statute § 28A-18-1(a) states as follows:

> Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate.

N.C. Gen. Stat. Ann. § 28A-18-1(a). A party does not have standing to institute an action on the part of his deceased kin when he is not the legal representative of the estate. *Carnahan v. Reed*, 281 S.E.2d 408, 410 (N.C. Ct. App. 1981); *see also Charles Schwab & Co. v. McEntee*, 739 S.E.2d 863, 867 (N.C. Ct. App. 2013). Accordingly, Tommy R. Combs cannot maintain an action on behalf of his brother's estate. Therefore, he does not have standing to assert any claims that the estate may have.

Further, Tommy R. Combs may not file an action on behalf of his deceased relative because Tommy is a layperson and not an attorney. 28 U.S.C. § 1654; *Boston v. Davis*, No. 3:11CV450, 2011 WL 6935710, at *6 (W.D.N.C. Dec. 29, 2011); *see Gilley v. Shoffner*, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004).

Accordingly, all claims brought on behalf of R.J. Combs are dismissed without prejudice. Given that this is a standing dismissal, it is applicable to all Defendants.

IV.     DEFENDANT DUNCAN'S MOTION TO DISMISS IS GRANTED

Defendant Duncan, a district court judge in Ashe County, moves to dismiss arguing that the Eleventh Amendment bars Plaintiff's claims and that any individual capacity claims are barred by judicial immunity. For the reasons stated herein, the motion is granted.

The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State or by Citizens or Subjects of any Foreign States." U.S. Const. amend. XI. To the extent Plaintiff is making a claim against Defendant Duncan in his official capacity, the claim is, in effect, an action against North Carolina because Defendant Duncan is a constitutional officer of North Carolina's judicial branch of government. N.C. Const. Art. IV, § 10; N.C. Gen. Stat. § 7A-140. North Carolina's treasury will be affected if this suit is maintained for retroactive damages, *see Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006); N.C. Gen. Stat. § 143-300.6. Accordingly, the claim is barred by the Eleventh Amendment. *Id.*

Any individual capacity claims are barred by judicial immunity. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment or damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are only two exceptions: (1) where the judge takes non-judicial action; and (2) where the judge takes judicial actions in the complete absence of all jurisdiction. *Id.* Here, at most, the allegations regarding Judge Duncan are that he did not answer his office phone and that he did not credit Plaintiff's objections. Accordingly, it is clear that Plaintiff's allegations do not fall within the above exceptions. Therefore, the individual capacity claims against Judge Duncan are dismissed as well.

V.  INDIVIDUAL DEFENDANTS

Before parsing through the individual motions, the Court dismisses the following individuals because there is not sufficient factual matter alleged to maintain any claim.

Plaintiff has not alleged plausible allegations against Defendants City Attorney John Kilby and Commissioners Poe, Rhodes, and Sands. Plaintiff stated that they were "invoilded [*sic*] in the unlawfully trespassing on the farm of plaintiff R.J. Combs (now decease)." (Doc. 1, at 1). There is no indication of how they were involved and no allegation that any of these parties were present when the purported trespass or conversion occurred. Accordingly, the

claims against City Attorney John Kilby and Commissioners Poe, Rhodes, and Sands are **DISMISSED**.

Former manager Pat Mitchell is also **DISMISSED** because there is not a factual allegation that implicates her.

With respect to Sheriff Williams and the nine deputies, Plaintiff alleges that these Defendants watched the abatement, which is described as an "unlawful act." (Doc. 1,at 1). This bare allegation is not enough to plausibly state a claim against these Defendants. Accordingly, Defendants James Williams, Tony Blevins, Christopher Eldreth, Joseph Francis, Joshua Hopkins, and Jerry D. Lewis are **DISMISSED**.

VI. APPLICABILITY OF DEFENSES

The Court will now address two defenses raised by Defendants in the instant case. Ultimately, the Court concludes that the consideration of these defenses is better suited for summary judgment. It has been aptly stated that:

> Only in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint may a court grant a motion to dismiss based on an affirmative defense. All of the facts necessary to the affirmative defense must clearly appear on the fact of the complaint. A plaintiff need not preemptively plead facts in the complaint in response to a potential affirmative defense.

*Edwards v. Santander Consumer USA, Inc.*, No. 5:10-CV-424-D, 2011 WL 2457498, at *2 (E.D.N.C. June 15, 2011) (internal citations and quotations omitted).

    A.    *Rooker-Feldman*

Both Garco and the Ashe County Defendants raised *Rooker-Feldman* as a defense to Plaintiff's claims. (Doc. 32, at 6); (Doc. 36, at 3). The *Rooker-Feldman* doctrine provides that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the

state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

Rooker-Feldman only applies in the following situation: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

*Rooker-Feldman* is generally inapplicable to non-parties to the prior state court action. *Lance v. Dennis*, 546 U.S. 459, 464 (2006). However, the Supreme Court left open the issue of whether "*Rooker–Feldman* [could] be applied against a party not named in an earlier state proceeding—*e.g.,* where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent." *Id.* at 466 n. 2.

The Court has already held that Tommy Combs cannot bring a claim on behalf of R.J. Combs. The judicial records establish that Tommy Combs was not a party to the prior state action. No party has briefed whether *Rooker-Feldman* should be extended to the types of claims that Tommy Combs is bringing. The Court invites the parties to address this issue in further briefing. *See Holliday Amusement Co. of Charleston v. State of S. Carolina*, 401 F.3d 534, 538 (4th Cir. 2005) ("This court also has not watered down that aspect of the *Rooker–Feldman* discussion found in *Johnson [v.De Grandy,* 512 U.S. 997 (1994)]. We have cited *Johnson* nine times, and have not disturbed the requirement of participation in the state proceeding."). At this stage, the Court will not dismiss the action under *Rooker-Feldman*. The parties may address this issue in further briefing by way of a 12(c) motion or at summary judgment.

B. Collateral Estoppel

Ashe County Defendants and Garco also raise collateral estoppel as a defense to the claims brought by Plaintiff. (Doc. 32, at 4); (Doc. 36, at 8). "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts ... to give state judicial proceedings 'the same full faith and credit ... as they have by law or usage in the courts of such State ... from which they are taken.'" *In re Lee*, 461 Fed. App'x 227, 235 (4th Cir. 2012) (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986)). "In determining the preclusive effect of a state court judgment under the Act, federal courts must look to the law of the state in which the judgment was entered." *Id.* Given that the state court order was from North Carolina, this Court looks to North Carolina law to determine the application of collateral estoppel.

Under North Carolina law, collateral estoppel applies when there is a (1) final judgment; (2) on the merits; (3) the issue in question was identical to an issue in the earlier suit; (4) that issue was actually and necessarily litigated; and (5) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier litigation." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 429 (1986); *see Hillsboro Partners, LLC*, 738 S.E.2d at 824-25 (applying collateral estoppel when plaintiff argued that demolition of building constituted a taking because building had previously been found to be a danger to public health and safety). Collateral estoppel can only be applied when the "the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *Royster v. McNamara*, 218 N.C. App. 520, 525 (N.C. Ct. App. 2012).

The "[c]ollateral estoppel analysis requires the court to look beyond the formal labels given to particular causes of action and, instead, determine whether the legal issues which necessarily were proved by [the] plaintiff . . .in the course of . . . litigation are identical to the

issues arising in the course of [the] claim." *In re Cobham*, No. 5:15-CV-137-FL, 2016 WL 74670, at *6 (E.D.N.C. Jan. 5, 2016). "Collateral estoppel bars 'the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Strates Shows, Inc. v. Amusements of Am., Inc.*, 646 S.E.2d 418, 423 (N.C. Ct. App. 2007) (quoting *Williams v. City of Jacksonville Police Dep't*, 599 S.E.2d 422, 427 (N.C. Ct. App. 2004)). "[U]nder appropriate circumstances collateral estoppel might . . . apply to defeat § 1983 constitutional claims because the dispositive issues had earlier been decided adversely to the federal plaintiffs." *Prosise v. Haring*, 667 F.2d 1133, 1137 (4th Cir. 1981).

North Carolina follows the traditional rule of collateral estoppel and generally views the Restatement as persuasive authority. *Sartin v. Macik*, 535 F.3d 284, 288 (4th Cir. 2008) (quoting *Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552, 556-67 (N.C. 1986)). The Restatement provides that "[a]n issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so." Restatement (Second) of Judgments § 27, cmt. e (1982).

Privity "denotes a mutual or successive relationship to the same rights of property." *Settle ex rel Sullivan v. Beasley*, 309 N.C. 616, 619 (1983). Privity exists when two parties share an interest in the same legal right. *State ex rel. Tucker v. Frinzi*, 474 S.E.2d 127, 130 (N.C. 1996). A party may be in privity with another if he "acquired an interest in the subject matter of the action either by succession, inheritance, or purchase from a party subsequent to the action." *Gregory v. Penland*, 634 S.E.2d 625, 630 (N.C. Ct. App. 2006) (quoting *Smith v. Smith*, 431 S.E.2d 196, 198 (N.C. 1993)).

Plaintiff, as successor-in-interest to the land and legatee or devisee under R.J.'s holographic will, <u>may be</u> in privity with R.J with respect to property owned by R.J. Given that

12

the Court finds that dismissal is not warranted with respect to this affirmative defense at this stage, the Court does not explicitly so find. Further, Defendants have not provided the Court with any authority suggesting that Plaintiff can be in privity with R.J. with respect to property he owned personally apart from any property formerly owned by R.J.

Whether or not R.J. had a full and fair opportunity to litigate these issues is not clear from the Complaint. Accordingly, this is not the extraordinary case where an affirmative defense should allow dismissal at the 12(b)(6) stage. Therefore, the Court will not dismiss the complaint on this basis at this stage.

Garco also states that "without the allegations of an unlawful or unauthorized entry, Plaintiff's current claims for constitutional violations cannot stand." Even assuming that privity is established, it remains unclear how the Court can find that the taking of these items was authorized. The Order Judge Duncan signed states that the property described in "Exhibit A" qualified as "junk" and a "junk yard." (*See* Doc. 31-2, at 2, Doc. 31-3, at 3 ¶ 1). The Abatement Order specifically stated that Ashe County "may enter onto the premises of the Defendant for the purpose of removing all items of junk that would be in violation of the County Junkyard Ordinance." (Doc. 31-2, at 2). There is no attached Exhibit A to docket entries 31-2 or 31-3. Further, while Judge Duncan issued an Order of Abatement, there was no litigation regarding whether Defendants lawfully carried out the order or why they were allowed to keep the entirety of the proceeds of the sale. *See Emery v. City of Toledo*, 178 F.3d 1294, 1999 WL 196533 at \*3 (unpublished table decision) (6th Cir. 1999) (in factually analogous case, collateral estoppel finding at district court level was "in error because Emery could not have raised this claim previously in that the events leading up to this particular claim had not transpired by the filing of the first suit."); *compare* § 93.04, *Junk* ("Old or scrapped copper, brass, batteries, paper, trash . . .

waste . . . scrapped building materials, discarded machinery, junked motor vehicles, or parts thereof; iron and steel and other scrap ferrous or non-ferrous material and plastics) *with* (Doc. 1, at 3) (indicating that Defendants took camper that Plaintiff was living in, tools, working farm equipment, and new auto parts); *Taylor v. Town of Franklin, N.C.*, 2007 WL 674577, at *3 (W.D.N.C. Feb. 28, 2007) (Judge Thornburg rejecting the recommendation stating that whether seizure of trailers and vehicles was reasonable should be done at summary judgment, because parties later clarified that only trash was seized).

Even if Plaintiff should be estopped from arguing that the property was not an unpermitted junkyard as defined by the Act, Plaintiff may still raise the unlitigated issue of whether the Junkyard Ordinance violates the Fourteenth Amendment.

## VII. GARCO'S MOTION TO DISMISS

As stated earlier, Garco raised the defenses of collateral estoppel and the *Rooker-Feldman* doctrine. Garco also argued that Plaintiff is not the proper person to raise claims on behalf of R.J. Combs's estate, already addressed above. Given that the Court has already addressed these contentions, Garco's Motion to Dismiss is **DENIED IN PART and GRANTED IN PART.** Specifically, as stated above, Plaintiff may not bring claims on behalf of R.J. Combs' estate. However, the following claims will proceed against Garco (1) unlawful seizure under § 1983;[7] and (2) conversion under North Carolina common law.[8]

## VIII. ASHE COUNTY DEFENDANTS' MOTION TO DISMISS

---

[7] "[The Supreme Court] ha[s] consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Gregg v. Ham*, 678 F.3d 333, 339 & n. 3 (4th Cir. 2012) ("A private party may be liable under § 1983 if acting 'under color of state law.'"); *Ashe v. City of Montgomery*, 754 F. Supp. 2d 1311, 1322 (M.D. Ala. 2010).

[8] "The simple definition of conversion is 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Mace v. Pyatt*, 691 S.E.2d 81, 90 (2010) (N.C. Ct. App. 2010) (quoting *Myers v. Cato Const. Co.*, 343 S.E.2d 281, 283 (N.C. Ct. App. 1986)).

The Court has already addressed the defenses of collateral estoppel and *Rooker-Feldman*. Moreover, given that the standing dismissal is applicable to all defendants, the Court will only address whether Plaintiff Tommy R. Combs' claims against the Ashe County Defendants survive dismissal.

The Ashe County Defendants have raised the following additional bases for dismissal: (1) improper service;[9] (2) all individual defendants should be dismissed because Ashe County is the real party in interest; (3) plaintiff has failed to allege individual capacity claims against the respective defendants; (4) plaintiff has failed to state a plausible § 1983 claims against Ashe County or against the Ashe County Defendants in their official capacities; and (5) Plaintiff has failed to state a plausible trespass claim.

### A. The Allegations of the Complaint Show that Individual Capacity Claims are raised

"[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). A factor indicating that a suit is filed in the individual capacity is where "the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint." *Id.* "Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." *Id.*; *Kitchen v. Barton*, No. 1:14-CV-00122-MR-DLH, 2015 WL 5567556, at *10 (W.D.N.C. Sept. 22, 2015).

---

[9] Given that the Court has already dismissed all Ashe County Defendants who were the subject of this specific motion, it is not addressed.

15

Plaintiff's request for damages indicates that he is bringing individual capacity claims. Accordingly, the Court declines to find that Ashe County is the only real party in interest and therefore will analyze the individual capacity claims.

Defendants cite *Taylor v. Town of Franklin, N.C.*, No. 2:06-CV-13, 2007 WL 674577 (W.D.N.C. Feb. 28, 2007) (Thornburg, J.) as commanding a different result. While the case may contain factual similarities with the instant one, the Court declines to follow *Taylor* because it did not discuss the *Biggs* factors.

### B. Individual Capacity claims under § 1983

With respect to Tim Winters, who is alleged to be an "enforcement officer[,]"the only allegation set forth is that he and Edwardson "intrusted [*sic*] Garco Inc.[,] Mark Blevins, and David Hoosier[,] are their workhands to enter trespass upon the farm of plaintiff R.J. Combs[.]"

This unintelligible allegation falls far short of the plausibility standard announced in *Twombly*. Accordingly, all claims against Tim Winters are dismissed.

### C. Official Capacity Claims under § 1983

An official capacity claim against an Ashe County employee or agent is merely another way of suing Ashe County directly. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, official capacity claims against the individual Ashe County defendants are dismissed as duplicative because Ashe County is a party.

To establish liability against Ashe County involving the allegations of seizures exceeding the scope of the order, there must be allegations that the constitutional violations are permitted under a specific municipal policy or custom. *Monell v. New York Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). "[It] is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475

U.S. 469, 480 (1986). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986).

Plaintiff has failed to plead a municipal policy or custom. Plaintiff has failed to plead that an official policymaker made the decision to exceed the bounds of the abatement order or identify said policymaker. *See Emery*, 1999 WL 196533 at *2; *see also Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *5 (N.D. Tex. Aug. 28, 2009) (failing to allege a final policymaker with respect to the action ordered justifies dismissal).

Accordingly, Plaintiff's § 1983 Fourth Amendment claim regarding abatement exceeding the terms of Judge Duncan's Order are dismissed against all Ashe County Defendants.

IX. REMAINING CLAIMS AGAINST COUNTY

Plaintiff also challenges the authority of Ashe County to abate the property under the Nuisance Ordinance. Ashe County did not initially interpret the Complaint to be alleging such a claim (Doc. 35) which is understandable given the ambiguous and scattershot nature of the pleadings.

A liberal construction of Plaintiff's *pro se* complaint indicates that Plaintiff alleges that Ashe County's zoning ordinance is unconstitutional, and, therefore, the enforcement of the zoning ordinance and subsequent abatement amount to a "taking" of Plaintiff's property or an unreasonable seizure under the Fifth and Fourth Amendments as applied to the States via the Fourteenth Amendment. *Presley v. City Of Charlottesville*, 464 F.3d 480, 485 (4th Cir. 2006) (the appropriation of property can implicate both Fourth and Fifth Amendments); (Doc. 1, at 3)

17

("If the Ordinance was properly enacted and constitutionally correct the Ordinance would apply to future conditions and not to past conditions.").[10]

No party has sufficiently briefed these issues. Ashe County addressed this issue only in its reply. Moreover, this issue is better suited for briefing at summary judgment. Therefore, Ashe County will remain a defendant.

**IT IS, THEREFORE, ORDERED THAT**

(1) MICHAEL D. DUNCAN'S MOTION TO DISMISS IS GRANTED;

(2) GARCO'S MOTION TO DISMISS IS GRANTED IN PART AND DENIED IN PART;

(3) ASHE COUNTY DEFENDANTS' MOTION IS GRANTED IN PART AND DENIED IN PART;

(4) ALL CLAIMS BROUGHT BY R.J. COMBS ARE DISMISSED WITHOUT PREJUDICE;

(5) THE FOLLOWING DEFENDANTS ARE DISMISSED:

    a. Michael D. Duncan

    b. Pat Mitchell

    c. Attorney John Kilby

    d. Commissioner Poe,

    e. Commissioner Rhodes,

    f. Commissioner Sands,

    g. James Williams,

    h. Tony Blevins,

    i. Christopher Eldreth,

---

[10] It is clear that Plaintiff only makes these allegations against the County and not against individual defendants.

j. Joseph Francis,

   k. Joshua Hopkins,

   l. Jerry D. Lewis, and

   m. Tim Winters

(6) THE FOLLOWING CLAIMS AND PARTIES REMAIN

   a. Unlawful seizure and conversion against Garco;

   b. Takings claim/unlawful seizure claim associated with the challenge to the Ashe County Ordinance against Ashe County;

   c. Mark Blevins, David Hoosier, and Rainbow Recycling remain parties to this lawsuit because they have not filed a motion to dismiss; and

   d. Defendant Zach Edwardson currently remains a party but has not been served and is the subject of a separate order.

Signed: July 6, 2016

*[signature]*

Richard L. Voorhees
United States District Judge